*Cat 2   15 BH   No Summons   Fee Paid*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------X
**DARRELL EUGENE WILLIAMS**

*on behalf of himself and all others similarly situated,*

      **Plaintiff,**

vs.

**ALLIEDBARTON SECURITY SERVICES**

      **Defendant.**
---------------------------------------------------------X

Civil Action No. **15-1348**

**CLASS ACTION COMPLAINT FOR RELIEF UNDER ERISA**

FILED

OCT 16 2015

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

      Plaintiff Darrell Eugene Williams (hereinafter "Plaintiff"), for his class action complaint, alleges the following complaint against Defendant AlliedBarton Security Services (hereinafter "AlliedBarton"), based on personal knowledge and on information and belief as appropriate:

## SUMMARY OF THE ACTION

      1.      ERISA Section 502(a)(3), the "catchall" provision of ERISA's remedial section, permits a "participant, beneficiary or fiduciary: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . .

      2.      The Defendant in this case has engaged in a scheme to undermine ERISA's protections, including its vesting requirements, and deny or otherwise limit benefits the law requires. Indeed, AlliedBarton has a common and systematic practice, in place for years, of

1

terminating its full-time employees just before they reach eligibility under the terms of the AlliedBarton vesting policy or for employee benefits, which is one (1) year. (See EXH. C)

3.      In fact, AlliedBarton often terminates their full-time employees prior to their eligibility for employee benefits, such as, but not limited to medical insurance, vacation, 401K, unemployment compensation, etc., thereby denying the full-time employees benefits to which they had non-forfeitable rights under ERISA.

4.      Termination of a full-time employee prior to that employee's eligibility for receiving benefits can occur by the employee allegedly breaking an employer rule, wherein AlliedBarton usually has various interpretation of its employer rule.

5.      Plaintiff brings this as a class action on behalf of: (a) all persons who were full-time employees of AlliedBarton, and (b) who were denied benefit as a result of being terminated at least within three (3) month of reaching eligibility under the terms of AlliedBarton's vesting policy, which is one (1) year.

6.      Accordingly, under ERISA § 502(a)(3), Plaintiff seeks equitable relief from AlliedBarton, including, without limitation, as available under applicable law, reinstatement of benefits, past, present, and future, as well as attorney's fees and costs.

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq.

8.      Venue is proper in the United States District Court, Western District of Pennsylvania under 28 U.S.C. § 1391(b) and/or 29 U.S.C. § 1132(e)(2) because Plaintiff resides in this District and, upon information and belief, a substantial part of the acts complained of herein occurred in this District.

## PARTIES

9.      Plaintiff Darrell E. Williams, Esq., who resides at 8010 Woodcreek Drive, Bridgeville, PA 15017, was a former full-time employee of AlliedBarton from November 1, 2011; and was terminated from the company on October 18, 2012.

10.     Upon information and belief, Defendant AlliedBarton Security Services, is a company having an office located at: 200 Fleet Street Pittsburgh, PA 15220. The Defendant is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5). Upon information and belief, as an employer, Defendant sponsors and administers the Benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(16)(A) and (B). As a sponsor and administrator of employee Benefit plans, Defendant owes employees a fiduciary duty.

## STATEMENT OF ALLEGED FACTS

**A. Related Actions.**

11.     On October 18, 2012, the Employer, AlliedBarton, terminated the employment of Plaintiff Darrell E. Williams. On November 7, 2012, the Duquesne Unemployment Compensation Service Center determined that Plaintiff was ineligible for compensation. The Plaintiff filed an appeal on November 26, 2012 and the matter was assigned to Referee David Blancett-Maddock, who held a hearing on January 4, 2013. On January 4, 2013, the Referee issued findings of fact and conclusions of law denying the application for benefits. Transcripts from the January 4, 2013 hearing are attached as Exhibit A. The Plaintiff appealed from that determination. On March 12, 2013, the Unemployment Compensation Board of Review ("UCBR") affirmed the decision of the Referee thus denying the Plaintiff unemployment compensation benefits. The Plaintiff appealed to the Pennsylvania Commonwealth Court from that determination. On September 25, 2013, the Commonwealth Court affirmed the

determination of the UCBR dated March 12, 2013. On Application For Reconsideration dated November 18, 2013, the Commonwealth Court of Pennsylvania affirmed its previous Order. The Plaintiff filed a Petition For Allowance Of Appeal with the Pennsylvania Supreme Court from the Order of the Commonwealth Court of Pennsylvania, which was denied.

## B. Statement of Facts

12. The Plaintiff started working full-time for AlliedBarton on November 1, 2011. The Plaintiff transferred to the EQT site sometime in February, 2012. As background, the EQT work site has two (2) guards stationed at the front desk on each of the three (3) eight hour shifts; one (1) guard patrols the building and the other is seated at the front desk. One of the guards is usually a supervisor and each split job duties between front desk and patrol. On day shift (7am-3pm), there is an extra guard stationed at the dock area (7am-5pm), which has a private garage for the tenants. On night shift, Plaintiff's shift (11pm to 7am), there are only two guards (desk and patrol). One of the guards goes down to the dock area between 5:30am and 6:00am and covers the dock post until the dock guard arrives at 7:00am. At 6:00am, the night shift guard who is now posted at the dock area opens the garage door. (See page 12, lines 25-30 of EXH. A).

13. The following events occurred during Plaintiff's shift on the morning of October 18, 2012. Around 5:45am, a night shift guard (hereinafter "new guard") who worked the night shift with the Plaintiff went to the dock area to cover the dock postposition until 7:00am, which is when the day-term dock guard arrived. This was the first time the new guard worked with the Plaintiff. The Plaintiff covered the front desk postposition at that time. It was already decided that the new guard would stay over to work another shift; the 7am to 3pm day-shift located at the front desk. The Operations Manager, Mark Wilcox, Employee Witness ("EW") erroneously

4

states that this new guard or other guard was running late. (See page 7, lines 24-26 of EXH. A). The new guard could not have been late because he worked with the Plaintiff on the (11pm to 7am) shift. Around 7:00am, the day-term dock guard had arrived and the new guard did not come to the front desk for check-in as usual. The Plaintiff assumed that this guard, who was new to the site, did not know that he had to come upstairs to the front desk at 7:00am for check-in in order to work another shift at the front desk. At 7:15am, the Plaintiff called the dock area and the new guard answered. The Plaintiff asked the new guard to come upstairs for check-in, and he said he would be right up. Since the day-term supervisor did not come upstairs to the front desk to check in and relieve as usual, the Plaintiff assumed he had not arrived. However, the supervisor had arrived and was at the dock area preventing/delaying the new guard from coming upstairs to relieve Plaintiff. When no one came upstairs at around 7:19am, the Plaintiff decided to make arrangements (moving his car as in the past) to work over his shift and to move his car when he saw the police making other people to move their cars.

      14.     The Plaintiff ran across the street to move his car from the front street into the dock area garage, which took Plaintiff approximately one (1) minute. When the Plaintiff pulled his car into the dock area to park, all three (3) guards (including the supervisor) were standing in the dock area. The supervisor and the new guard (who worked night shift with the Plaintiff) were supposed to be at the front desk for check-in at 7:00am. The Plaintiff ran back upstairs to the front desk, and the supervisor and the new guard came to the front desk about two (2) minutes later. After a discussion with the supervisor telling Plaintiff that he was going to write him up for parking in the dock area, the Plaintiff responded back in a few words of how unbelievable this incident was. The Plaintiff left at around 7:25am. All relief guards were on time and available, but they did not report to the front desk as required.

5

15. The Plaintiff received a phone call around 11:30am on the same day from the Operations Manager, Mark Wilcox, (EW) telling the Plaintiff that he was terminated. A Write-up dated October 26, 2012 (see EXH. B), written by the EW was received in the mail by the Plaintiff about one (1) week after the Plaintiff was terminated. The reason given for the Plaintiff's termination was Job Abandonment by breaking the employer's rule that states: "[a]t no time is an Officer permitted to leave their post until properly relieved or given permission by their supervisor." (See EXH. B).

16. During the meeting with the Referee on appeal from the determination from the Duquesne Unemployment Compensation Service Center, the EW was asked if the dock person is allowed to leave the dock area when the dock doors are opened at 6:00am, the EW said "No they are not." (See page 12, line 30 of EXH. A). The dock doors remain open until the dock guard leaves at 5:00pm. According to the EW, the 7:00am to 5:00pm dock guard cannot leave the post until another guard can cover his post.

17. The following are the facts according to the Defendant's Employer Witness ("EW) own testimony and that of the UCBR.

The UCBR in its Brief acknowledged the following:

> "During a shift, it is therefore possible for the **patrolling officer** to be radioed in order to relieve **either of the other officers** for the short time to use the restroom, smoke, or get a drink. Since the officer is not alone on the shift, there is **always** another person who can relieve him, which would comply with Employer's rule." (Emphasis added).

See page 8, paragraph 2 of EXH. D).

18. In view of the foregoing, the three (3) postpositions include an officer manning the front desk, an officer manning the dock area and one on patrol. The EW stated that a guard cannot leave his post for any reason and that there are no exceptions to this rule and that other

6

employees were terminated for the same violation "on numerous occasions." (See page 9 of EXH. A). Furthermore, the EW stated that proper relief is "by another officer **sitting** at the lobby desk." (Page 13, lines 11-13 of EXH. A). This false admission by the EW is believed to be the cause of the Plaintiff being denied unemployment compensation benefits.

19. First, there are two different interpretations that the record states for leaving a post unattended. First, the EW states that proper relief is "by another officer **sitting** at the lobby desk." (Page 13, lines 11-13 of EXH. A). Next, the EW states 2) leaving your post to open the lobby doors to get some air or heat is NOT considered abandoning a post because "you can still visually see the lobby desk" which is in the "line of sight." (Page 12, lines 11-20 of EXH. A). These two contradictions occurred by the EW in the same testimony.

20. Secondly, it is not possible for three (3) guards covering three (3) postpositions to **always** have relief available throughout the entire shift. The evidence of record found in the Employer's Rules/Standards of Conduct (page 2 of EXH. E) regarding mandatory lunch breaks for hourly employees (e.g., $8.70 per hour) demonstrates that there is at least one and a half hours (1-1/2 hrs.) per shift (i.e., ½ hour lunch break per officer) where there is NOT always another officer to relieve the other two officers for the short time to use the restroom, smoke break, or get a drink. Furthermore, there is no cafeteria in the EQT building, and AlliedBarton did NOT have a policy stating that the guards were not allowed to leave the premises to go to lunch or any other break.

21. Furthermore, the EW testified that it was never brought to his attention that guards were leaving the lobby area. (See page 9 of EXH. A). He also testified that if such behavior was occurring, it was against policy. (See page 9 of EXH. A). In addition, the EW will not be able to produce a "Daily Log Report" that shows the **dock** guard being relieved for such

7

lunch and breaks. The Daily Log Report could not be available for the unemployment compensation hearing on November 4, 2013. However, the Plaintiff will request through discovery that AlliedBarton produce such documents. Because the EW now admits that to abandon your post is "to leave your post for any reason." (page 11, lines 21-22 of EXH. A), the Plaintiff will prove that the EW's statements are false or did not occur on the EQT site.

22. In view of the above, it is neither practical nor possible for three (3) guards having three (3) postpositions to cover for each other for "any reason." Therefore, leaving a post especially for a minimal amount of time was not considered abandonment of a post, thus requiring termination.

## CLASS ALLEGATIONS

23. Plaintiff brings this action as an individual case and as a class action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined as all former full-time employees of AlliedBarton that were terminated either prior to their one (1) year anniversary, as further defined and limited below (the "Class").

24. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

25. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Class is the Defendant and their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint-venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or

their officers and/or directors, or any of them, the Judge assigned to this action, and any member of the Judge's immediate family.

26. **Numerosity**. The Class is so numerous that joinder of all members in this action is impracticable. Plaintiff believes, and on that basis alleges, that the proposed Class contains hundreds, if not thousands, of similarly situated former full-time AlliedBarton employees scattered throughout at least nineteen (19) states. Upon information and belief, these employees were terminated because of a rule violation according to one of the employer's various interpretations at least three (3) months before benefits would have accrued and, thus were also subject to the same common scheme depriving them of employee benefits, including, but not limited to termination benefits, such as state unemployment benefits.

27. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions, each of which yield a common answer, include, but are not limited to, the following:

(A) Whether the Plaintiff and the Class are former full-time employees of AlliedBarton and would have been entitled to employee benefits if the Plaintiff and Class Members were not terminated before being eligible for benefits (e.g., one (1) year of employment) according the terms identified in the employer's handbook;

(B) Whether the Plaintiff and the Class would have been eligible to AlliedBarton's benefits plans because they were, in fact, full-time employees for at least nine (9) months before being terminated by the AlliedBarton;

(C) Whether the Plaintiff and the Class are entitled to reimbursement for benefits they should have received if the employee reach one (1) year of full-time employment according the terms identified in the employer's handbook, but which they were improperly denied based on AlliedBarton's improper termination of the members of the Class at least weeks (12) weeks prior to the employee being eligible for benefits;

      D)    Whether the Plaintiff and the Class were terminated based upon an employer's rule that provides for immediate termination if broken;

      E)    Whether the Plaintiff and the Class were NOT on a probationary period for rule violations or poor performance prior to being terminated;

      (F)    Whether the Plaintiff and the Class are entitled to surcharge remedy of AlliedBarton's benefits plans under ERISA § 502(a)(3) and corresponding recalculation and restitution of benefits improperly denied in order to comply with ERISA's requirements;

      (G)    Whether the Plaintiff and the Class were denied unemployment compensation benefits, and if so, the Plaintiff and Class should be reimbursed for these benefits denied.

28.    **Typicality.** Plaintiff's claims are typical of the claims of the Class, in which, the Plaintiff and each member of the Class all have been terminated at least twelve (12) weeks prior to being eligible for employee benefits, and such termination was the result of the breaking of an employer's rule that is subject to immediate termination.

29.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained motivated counsel (myself) that has experienced in litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

30.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Given the investments that Class members made to become AlliedBarton full time employees, it would now be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if the allegedly unskilled and unsophisticated Class members could afford such individualized litigation, the court system could not sustain it. After a review of the history of lawsuits against AlliedBarton, almost all of the lawsuits brought by former security guards are done *pro se*. Individualized claims brought by members of the Class would create the

danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I
## VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)
*(Claim for Breach of Fiduciary Duty)*

31. Plaintiff hereby incorporates by reference as fully set forth, the allegations of all preceding paragraphs.

32. At all relevant times, the Defendant AlliedBarton was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21).

33. ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use…" 29 U.S.C. § 1104(a)(1)(B).

34. Simply stated, "[t]o recover under Section 510 the employee must show that the employer made a conscious decision to interfere with the employee's attainment of benefits." Turner v. Schering-Plough Corp., 901 F.2d 335, 347 (3d Cir. 1990). See also Schweitzer v. Teamsters Local 100, 413 F.3d 533, 537 (6th Cir. 2005) (plaintiff must show a "causal connection" between employer's decision to terminate and the issue of benefits); Dewitt v. Penn Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997)(plaintiffs must show a "specific intent" on the part of defendants to interfere with plaintiffs' attainment of benefits).

35.     The specific intent requirement has been equated with the showing required under the criminal law. <u>Asprino v. Independent Blue Cross/Pennsylvania Blue Shield</u>, No. 96-7788, 1997 WL 634522, at * 5 (E.D. Pa. Oct. 16, 1997)("Specific intent, as this Court has often charged juries, means more than a general intent to commit an act. It requires that the defendants knowingly did an act which the law forbids, purposely intending to violate the law.").

36.     "This specific intent is present where the employee's (future or present) entitlement to protected benefits is a motivating factor in the employer's decision. A factor is motivating if it can be said that it has 'a determinative influence on the outcome.'" <u>Koons v. Aventis Pharmaceuticals, Inc.</u>, 367 F.3d 768, 777 (8th Cir. 2004). "In other words, [plaintiff] had to show that he would not have been terminated had he not been entitled to benefits." <u>Id</u>.

37.     Nevertheless, plaintiff need not prove that "the sole reason for his termination was to interfere with pension rights." <u>Gavalik v. Continental Can Co.</u>, 812 F.2d 834, 851 (3d Cir. 1987). Rather, "§ 510 of ERISA requires no more than proof that the desire to defeat pension eligibility is 'a determinative factor' in the challenged conduct." <u>Id</u>. at 860. The Third Circuit has held that, to prove pretext, a plaintiff must prove something more. <u>DiFederico v. Rolm Co.</u>, 201 F.3d 200, 207 n. 3 (3d Cir. 2000) ("While our opinions and the opinions of other circuits do sometimes use terms like 'a motivating factor,' 'contributing factor' or 'sole reason' to describe what is or is not an employer's motive, we believe it is preferable, in a pretext case analysis, to speak either in terms of 'determinative' . . . or 'real reason'"). See also <u>Eichorn v. AT&T Corp.</u>, 248 F.3d 131, 149 (3d Cir. 2001) ("Then, the burden shifts back to the plaintiff to show that the employer's rationale was pre-textual and that the cancellation of benefits was the 'determinative influence' on the employer's actions.").

38.     In a class action, as more fully described below, notwithstanding the fact that the

class can show that the decision to terminate the plaintiffs was motivated, in part, by an illicit consideration, the employer is given an opportunity to disprove causation. Once the plaintiffs establish that the desire to avoid benefits liability was a determining factor in the decision to terminate plaintiffs' employment, the defendant, in order to avoid liability, remains free to prove "that it would have reached the same conclusion or engaged in the same conduct in any event, i.e., in the absence of the impermissible consideration." Gavalik, 812 F.2d at 863.

39. Plaintiff's temporal proximity to vesting, at the time of her discharge, may be sufficient to establish the threshold prima facie showing. Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996)(proximity to vesting provides some inference of intentional, prohibited activity); Humphreys, 966 F.2d at 1044 (same). See also Eichorn v. AT&T Corp., 248 F.3d 131, 149 (3d Cir. 2001) ("temporal proximity provides circumstantial evidence that the cancellation of the benefits was a motivating factor in the timing of the no-hire agreement"); Pennington v. Western Atlas, Inc., 202 F.3d 902, 908 (6th Cir. 2000)("Plaintiffs established a prima facie case based upon the proximity of Plaintiffs discharge to their age of receiving full retirement benefits.").

40. AlliedBarton's improper termination of its non-probationary full time Plaintiff and Class Members within three (3) months of being eligible for employee benefits because of an employer rule violation having various interpretations was unlawful and a breach of Defendant's fiduciary duties.

41. The Plaintiff and Class are entitled to equitable relief under ERISA § 502(a)(3) thus requiring Defendant to pay restitution in the form of a surcharge remedy or otherwise credit the Plaintiff and the Class for all ERISA benefits to which they would have been retroactively entitled under the employer vesting requirement in order to be made whole and to

prevent AlliedBarton's unjust enrichment.

42. AlliedBarton's conduct has caused actual harm to the Plaintiff and the Class in an amount to be proven at trial.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff individually, and on behalf of all others similarly situated, demand judgment against the Defendant and relief from this Court as follows:

A. An order certifying the Class as described with the named Plaintiff as Class Representative(s) and appointing undersigned counsel as Lead Counsel for the Class;

B. Judgment that Defendant breached their fiduciary duties;

C. Benefits owed under the Benefit plans, including any diminished plan assets and accrued benefits, for example, under ERISA, 29 U.S.C. § 1109;

D. Judgment that the practices complained of herein are unlawful under ERISA;

E. Appropriate statutory penalties under ERISA, 29 U.S.C. § 1111;

F. Reasonable attorney's fees and cost under ERISA, 29 U.S.C. § 1132(g)(1);

G. That the Plaintiff be awarded any further or additional relief to which he may be entitled;

H. An award of attorneys' fees, plus the costs and expenses of this action;

I. Pre- and post-judgment interest, as afforded by law; and

J. All such other legal and equitable relief to which the Plaintiff and the Class are entitled.

DATED: October 16, 2015

Respectfully Submitted,

*Darrell E. Williams* (signature)
Darrell E. Williams, Plaintiff
8010 Woodcreek Drive
Bridgeville, PA 15017
Telephone: 412-983-3901

***Counsel for Plaintiff and the Class***